### THOMAS PROSSER & SON v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit. December 4, 1907.)

#### No. 65 (4,057).

1. Customs Duties—Boards of General Appraisers—Surrender of Jurisdiction.

Where a board of three General Appraisers has, as provided in Customs Administrative Act June 10, 1890, c. 407, § 14, 26 Stat. 137 [U. S. Comp. St. 1901, p. 1933], acquired jurisdiction over a case through the transmission by the collector of the papers in the case, it is then the duty of that board to "examine and decide the case thus submitted," as prescribed by said section; it may not afterward surrender its jurisdiction to another board; and a rule adopted by the General Appraisers is invalid which, in order to prevent conflicting decisions, provides for the transfer of a case from one board to another when the majority of all the general appraisers is of opinion that a proposed decision in the case by one board conflicts with a previous decision.

2. MANDAMUS—GENERAL APPRAISERS.

In the event that a board of General Appraisers, after acquiring jurisdiction of a case under Customs Administrative Act June 10, 1890, c. 407, § 14, 26 Stat. 137 [U. S. Comp. St. 1901, p. 1933], refuses to "examine and decide," as prescribed in said section, an importer would be entitled to apply to the proper court for a mandamus to require the board to exercise its jurisdiction.

Noyes, Circuit Judge, dissenting.

Appeal from the Circuit Court of the United States for the Southern District of New York.

This cause comes here upon appeal from a decision affirming a decision of a board of three General Appraisers, G. A. 6,069 (T. D. 26,477), which sustained the action of the collector of the port of New York in classification for duty of certain imports under the tariff act of 1897.

For decision below, see 154 Fed. 721.

Everit Brown, for importers.

D. Frank Lloyd, Asst. U. S. Atty., and John A. Kemp, Solicitor of Customs.

Before LACOMBE, WARD, and NOYES, Circuit Judges.

LACOMBE, Circuit Judge. It appears from the return of the General Appraisers that the protests of the importers, with accompanying documents, were duly transmitted to a board of three General Appraisers who had been duly designated to examine and decide cases arising upon protest, and who were known more specifically as "Board 2." Such board regularly acquired jurisdiction of said protests and had heard evidence and arguments and received briefs of counsel on both sides in them, and had prepared and unanimously signed, but had not promulgated a decision sustaining said protests. Thereafter at a meeting of the nine General Appraisers, the proposed decision was challenged, and after discussion a vote was taken on the question "Shall the challenge be sustained?" The members of Board 2 and one other General Appraiser voted in the negative, and five other General Appraisers in the affirmative. Thereupon the cases were taken from Board 2 and sent to three other General Appraisers, known as "Board 1," which, against importers' objection and exception, took additional testimony, and rendered the decision now under review.

The assumed authority for this procedure is as follows: Section 12 of the Customs Administrative Act of June 10, 1890, c. 407, 26 Stat. 136 [U. S. Comp. St. 1901, p. 1931], provides that the nine General Appraisers "shall be employed at such ports and within such territorial limits, as the Secretary of the Treasury may from time to time prescribe, and are hereby authorized to exercise the powers and duties devolved upon them by this act, and to exercise, under the general direction of the Secretary of the Treasury, such other supervision over appraisements and classifications for duty, of imported merchandise as may be needful to secure lawful and uniform appraisements and classifications at the several ports. Three of the General Appraisers shall be on duty as a board of General Appraisers daily (except Sundays and legal holidays) at the port of New York, during the

business hours prescribed by the Secretary of the Treasury, at which port a place for samples shall be provided," etc.

On December 26, 1903, the Secretary of the Treasury amended the regulations as to the Board of General Appraisers so as to read (T. D. 24,861):

"Art. 1726. The General Board shall adopt such rules as may be necessary to prevent the promulgation of conflicting decisions."

On December 16, 1903, the members of the General Board of General Appraisers adopted the following rule:

"In order to prevent as far as possible the rendering of conflicting decisions in classification cases by the several boards, all opinions, before promulgation, shall be submitted to the several boards on duty at the port of New York, and if a majority of the members of either of said boards are of the opinion that any proposed decision conflicts with another decision concurrent therewith, or theretofore made by the board or by the United States courts, the President shall submit the same to all the members of the General Board present at the port of New York; and, whenever a majority of said General Board so present shall be of the opinion that a conflict exists, the case shall be reassigned by the President for decision to a board of three, the majority of whose members agree with the majority of said General Board."

The judge who heard the cause at circuit expressed the opinion that:

"The reasonableness of a rule or regulation which tends to avoid or lessen conflicting decisions by the board or which points out the way to consistent adjudications of litigated questions is to be commended."

That is true enough; but in the opinion of a majority of this court the particular rule is in conflict with the statute itself. When the old method of customs administration was revised, and the review of the collector's classification by a court and jury was abolished, Congress provided another tribunal to which the importer, if dissatisfied, might resort, and to which, upon giving notice of dissatisfaction, his cause would be committed. U. S. v. Loeb, 107 Fed. 692, 46 C. C. A. 562. Nine General Appraisers were provided for to whom, individually, certain powers and duties were assigned. No powers and duties were distributed to the nine collectively, but, quite naturally, they have been organized under treasury regulations into a General Board of General Appraisers to facilitate their administrative work. In creating the new tribunal of review, however, Congress provided that, upon notice of dissatisfaction, the invoice and all the papers and exhibits shall be transmitted "to the board of three General Appraisers, which shall be on duty at the port of New York, or to a board of three General Appraisers who may be designated by the Secretary of the Treasury for such duty at that port or at any other port, which board shall examine and decide the case thus submitted." Customs Administrative Act of June 10, 1890, c. 407, § 14, 26 Stat. 137 [U. S. Comp. St. 1901, p. 1933]. It seems entirely clear that Congress contemplated the creation of a definite tribunal of review, to which the importer might resort, which should acquire jurisdiction of his cause when the invoice, papers, and exhibits were transmitted, and which, when jurisdiction had been acquired, should examine and decide the cause. Under the language used, the im-

porter, in the event of that tribunal refusing to proceed after it had acquired jurisdiction, would be entitled to apply to the proper court for a mandamus to require the board of three General Appraisers to exercise the jurisdiction which the statute conferred upon them. This being so, a majority of this court are unable to see how another board of three to whom the papers were not in the first instance transmitted could assume jurisdiction of a cause already within the jurisdiction of the first board, which had a statutory duty to discharge with regard to it.

For these reasons the majority hold that the decision now under review (of Board 1) was rendered without jurisdiction of the controversy, and should be vacated. Since the propriety of the decision of Board 1 is the only matter brought before us for decision by this appeal, the order issued will be simply a reversal of such decision.