WORCESTER COUNTY TRUST CO. v. LONG, Com'r of Corporations, etc., et al.

No. 4292.

District Court, D. Massachusetts.

April 27, 1936.

Merrill S. June and Bradley B. Gilman, both of Worcester, Mass., for plaintiff.

Norman W. Bingham, Jr., and George S. Fuller, both of Boston, Mass., for defendants Ray L. Riley, W. H. H. Gentry, and Frank P. Sproul.

W. H. H. Gentry, pro se.

Paul A. Dever, Atty. Gen. of Mass., and Raymond H. Favreau, Asst. Atty. Gen., for defendant Henry F. Long.

BREWSTER, District Judge.

This proceeding is brought under the new Federal Interpleader Act (Pub. No. 422, approved January 20, 1936, 49 Stat. 1096). This act amends section 24 of the Judicial Code as amended by inserting at the end a new subparagraph 26 (28 U.S. C.A. § 41 (26). The material provisions of this amendment follow:

It confers upon the court original jurisdiction—

"(a) Of suits in equity begun by bills of interpleader or bills in the nature of bills of interpleader duly verified, filed by any * * * corporation, * * * having in * * * its custody or possession money or property of the value of $500 or more, * * * or being under any obligation written or unwritten to the amount of $500 or more, if—

"(i) Two or more adverse claimants, citizens of different States, are claiming to be entitled to such money or property, or to any one or more of the benefits arising * * * by virtue of any such obligation; and

"(ii) * * *

"(b) Has given bond payable to the clerk of the court in such amount and with such surety as the court or judge may deem proper, conditioned upon the compliance by the complainant with the future order or decree of the court with respect to the subject matter of the controversy.

"Such a suit in equity may be entertained although the titles or claims of the conflicting claimants do not have a common origin, or are not identical, but are adverse to and independent of one another.

"(b) Such a suit may be brought in the district court of the district in which one or more of such claimants resides or reside.

"(c) Notwithstanding any provision of the Judicial Code [Part I of this title] to the contrary, said court shall have power to issue its process for all such claimants and to issue an order of injunction against each of them, enjoining them from instituting or prosecuting any suit or proceeding in any State court or in any United States court on account of such money or property or on such instrument or obligation until the further order of the court; which process and order of injunction shall be returnable at such time as the said court or a judge thereof shall determine and shall be addressed to and served by the United States marshals for the respective districts wherein said claimants reside or may be found.

"(d) Said court shall hear and determine the cause and shall discharge the

complainant from further liability; and shall make the injunction permanent and enter all such other orders and decrees as may be necessary or convenient to carry out and enforce the same."

The complainant is the executor under the will of Robert H. Hunt. The respondents named in the proceeding are officials of the state of California and the commonwealth of Massachusetts. The respondent Long has appeared generally and filed an answer to the bill. A special appearance has been entered on behalf of the California respondents for the purpose of moving to dismiss the bill and to dissolve outstanding restraining orders. Inasmuch as the motion to dissolve injunctions will stand or fall with the motion to dismiss, it will only be necessary to consider the latter. The motion, of course, admits, for present purposes, all facts properly pleaded in the bill of complaint.

It is alleged that the respondent Henry F. Long is Commissioner of Corporations and Taxation in the Commonwealth of Massachusetts and a citizen of Massachusetts; that the respondent Riley is comptroller, the respondent Gentry, inheritance tax attorney, and the respondent Sproul, inheritance tax appraiser of the state of California, all citizens of California.

On June 11, 1935, Robert H. Hunt died testate, leaving real estate and bank deposits in California and bank deposits in Massachusetts and considerable intangible personal property, most of which is in the custody and possession of the complainant in Worcester, Mass.

On June 26, 1935, the will of said Hunt was admitted to probate in the probate court for the county of Worcester, Mass. On July 29, 1935, ancillary proceedings were instituted in California pursuant to which the Security-First National Bank of Los Angeles was appointed administrator with the will annexed of the estate of said Hunt by the superior court of the state of California in and for the county of Los Angeles.

It is alleged that the complainant is under obligations to pay any and all estate, inheritance, and succession taxes to the officials of the state of California and the commonwealth of Massachusetts, and that the officials of each state are asserting the right to assess and collect succession and inheritance taxes upon the transfer of intangibles upon the theory that the decedent, at the time of his death, was domiciled in the respective state; that there is involved in this controversy over $100,000, which sum the complainant has in its custody, and the complainant has given bond in accordance with the provisions of the said Interpleader Act.

It is further alleged that the threatened collection of both the California and Massachusetts taxes, each based upon an inconsistent claim of domicile, will deprive the estate of property without due process of law and will deny to it equal protection of the law in contravention of the Fourteenth Amendment to the Constitution of the United States.

The complainant has caused process to issue to the respondents in Massachusetts and in California and has secured a temporary restraining order against each from taking any further proceedings to assess, determine, or collect the inheritance taxes due from the estate. Complainant prays that this court require the respondents to plead their adverse claims to the money and property in the possession of the complainant, or to the benefits arising by virtue of the complainant's obligation to pay the inheritance taxes. The complainant further prays that the court determine the domicile of the decedent, the persons entitled to the said money, property, or benefits, and the sum owed to any of the respondents; and that the court permanently enjoin respondents of the nondomiciliary state from taking any action to determine or collect inheritance taxes based upon domicile except as determined by this court.

Complainant furthermore asks that it be discharged of all further obligations to the respondents upon compliance by it with such decree as the court may make in the case.

It thus appears from the allegations of the bill that the taxing authorities in the two states are asserting conflicting rights to compute a legacy and succession tax, based upon the assumption that the decedent was domiciled in their respective state, and this court is asked not only to determine which of the states is entitled to tax transfers of intangibles, but it is also required to determine the amount of the tax due each state and enter a decree requiring the payment of the taxes thus determined, which payment shall operate to discharge the Massachusetts executor of all liability for such taxes.

█ It is now settled law that intangibles have only one situs for the purpose of inheritance or succession taxes, and that that situs is the domicile of the decedent at the time of his death. First National Bank of Boston, Ex'r, v. Maine, 284 U.S. 312, 52 S.Ct. 174, 76 L.Ed. 313, 77 A.L.R. 1401; Farmers' Loan & Trust Co., Ex'r, v. Minnesota, 280 U.S. 204, 50 S.Ct. 98, 74 L.Ed. 371, 65 A.L.R. 1000; City Bank Farmers' Trust Co., Ex'r, v. Schnader, 291 U.S. 24, 54 S.Ct. 259, 78 L.Ed. 628.

█ It is equally well settled that a person can have at one time only one domicile, however many places of residence he may have maintained in his lifetime. Tax Collector of Lowell v. Hanchett, 240 Mass. 557, 134 N.E. 355; Commonwealth v. Bogigian, 265 Mass. 531, 164 N.E. 472; United States ex rel. Thomas v. Day (C.C.A.) 29 F.(2d) 485.

█ It is, therefore, obvious that if the taxing officials of both of these states carry out their threat of imposing an inheritance tax upon the transfer of decedent's intangibles, one or the other of the states will be violating the Fourteenth Amendment. First National Bank of Boston, Ex'r, v. Maine, supra; Anglo-California Trust Co. v. Riley, 220 Cal. 26, 29 P.(2d) 186.

I fully appreciate the difficulties encountered in preventing this unconstitutional exaction if the complainant cannot avail itself of the Interpleader Act. The difficulties are well illustrated in the case of Estate of John T. Dorrance where the states of Pennsylvania and New Jersey have each exacted a tax of several million dollars upon the transfer of intangibles which Dorrance left at the time of his death. The Pennsylvania courts of last resort (In re Dorrance's Estate, 309 Pa. 151, 163 A. 303) held that Dorrance was domiciled in that state, and, so far as the litigation has proceeded in the New Jersey courts, they have been unanimous in holding that Dorrance was domiciled in New Jersey. In re Dorrance's Estate, 115 N.J.Eq. 268, 170 A. 601; Id., 116 N.J.Eq. 204, 172 A. 503; Dorrance v. Martin, 176 A. 902, 13 N.J. Misc. 168. See, also, Hill v. Martin, 296 U.S. 393, 56 S.Ct. 278, 80 L.Ed. ——, affirming (D.C.) 12 F.Supp. 746.

I can very readily agree with complainant's counsel that the question here presented is one of unusual public interest. A short cut to the answer would be to hold that the two states were the adverse claimants, and that consequently the jurisdictional requirement of the statute was not met since a state cannot be a citizen. I do not believe, however, that the matter can or ought to be dismissed in so summary a fashion.

█ It is the contention of the respondents that the proceeding is one against states and therefore is prohibited by the Eleventh Amendment to the Constitution of the United States, which provides that the judicial power of the United States shall not be construed to extend to any suit in law or equity commenced, or prosecuted, against one of the United States by citizens of another state.

The recent act has extended the scope of earlier interpleader acts by bringing within its ambit not only bills of interpleader but bills in the nature of interpleader. These proceedings are by the terms of the act described as suits in equity and must be regarded as suits within the purview of the Eleventh Amendment. The matter is reduced to the single question whether, on the allegations of the bill, we must hold that the suit is against the state of California, the respondent officials named in the proceedings being merely nominal parties.

█ The fact that the respondents are joined in their official capacity as representatives of the state does not necessarily defeat jurisdiction. In suits by or against administrators or guardians, the jurisdictional diversity of citizenship is determined with reference to the citizenship of the administrator or the guardian without regard to the citizenship of the heirs or the ward, even though these have a very definite and substantial interest in the outcome of the litigation. Rice v. Houston, 13 Wall. 66, 20 L.Ed. 484; Amory v. Amory, 95 U.S. 186, 24 L.Ed. 428; Continental Insurance Co. v. Rhoads, 119 U.S. 237, 7 S.Ct. 193, 30 L.Ed. 380; Mexican Central Ry. Co. v. Eckman, 187 U.S. 429, 23 S.Ct. 211, 47 L.Ed. 245.

The rule has been extended to cases where the administrator sues for the benefit of certain named beneficiaries entitled by statute to the amount recovered. Mecom v. Fitzsimmons Drilling Co., 284 U.S. 183, 52 S.Ct. 84, 76 L.Ed. 233.

It is to be noted that, in the case of a guardian, the rule applies only if the

laws of the state of his appointment give him the right to sue in his own name on behalf of the ward. In a suit by a guardian ad litem or next friend, the citizenship of the minor controls. Voss v. Neineber (C.C.) 68 F. 947; Mecom v. Fitzsimmons Drilling Co., supra.

It is therefore important to inquire whether any taxing official of California is authorized to sue for the tax in his own name, or must the suit be brought in the name of the state?

An examination of the California statutes leads to the conclusion that the comptroller, one of the respondents named, is the one in whose name the proceedings to recover taxes would probably be brought. While there is no express provision of the statute imposing upon the comptroller the duty of instituting proceedings to recover inheritance taxes, presumably due to the fact that the court in which the estate is administered not only determines but enforces the collection of the taxes, the California statutes, however, do impose a tax upon transfers other than testamentary transfers, and in such cases the comptroller has the duty of instituting appropriate proceedings to collect the tax upon such transfers, and appellate proceedings are prosecuted in his name. In any event, I find nothing in the statute that requires that the suit be brought exclusively in the name of the state of California.

The state is not made a nominal party to these proceedings at bar, but it is now well settled that the jurisdiction of the federal court is not to be determined by reference solely to the nominal parties appearing on the record. In several cases it has been held that this court is without jurisdiction to entertain suits against state officials on the ground that, while the suit was nominally against the officials, they were, in fact, against the state as a sovereignty. Cunningham v. Macon & Brunswick R. R. Co., 109 U.S. 446, 3 S.Ct. 292, 609, 27 L.Ed. 992; In re Ayers, 123 U.S. 443, 8 S.Ct. 164, 31 L.Ed. 216; Hagood v. Southern et al., 117 U.S. 52, 6 S.Ct. 608, 29 L.Ed. 805; Fitts v. McGhee, 172 U.S. 516, 19 S.Ct. 269, 43 L.Ed. 535.

On the other hand, in many suits against state officials, the jurisdiction of the court has been upheld. Davis v. Gray, 16 Wall. 203, 21 L.Ed. 447; Board of Liquidation v. McComb, 92 U.S. 531, 23 L.Ed. 623; Poindexter v. Greenhow, 114 U.S. 270, 5 S.Ct. 903, 914, 962, 29 L.Ed. 185; Pennoyer v. McConnaughy, 140 U.S. 1, 11 S.Ct. 699, 35 L.Ed. 363; Tindal v. Wesley, 167 U.S. 204, 17 S.Ct. 770, 42 L.Ed. 137; Smyth v. Ames, 169 U.S. 466, 18 S.Ct. 418, 42 L.Ed. 819; Prout v. Starr, 188 U.S. 537, 23 S.Ct. 398, 47 L.Ed. 584; Gunter v. Atlantic Coast Line R. R. Co., 200 U.S. 273, 26 S.Ct. 252, 256, 50 L.Ed. 477; Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714, 13 L.R.A.(N.S.) 932, 14 Ann.Cas. 764; Sterling v. Constantin, 287 U.S. 378, 53 S.Ct. 190, 193, 77 L.Ed. 375; State of Missouri v. Fiske, 290 U.S. 18, 54 S.Ct. 18, 78 L.Ed. 145.

It is not easy to trace definitely the line which marks the boundary between those cases which have come within the inhibitions of the Eleventh Amendment and those which have not. In many of the cases the statement approved by the court is to the effect that a suit in equity may be entertained against individuals for the purpose of preventing them, as officers of a state, from enforcing an unconstitutional enactment under the authority of which they were about to commit some specific wrong or trespass, to the injury of plaintiff's right. Prout v. Starr, supra; Pennoyer v. McConnaughy, supra; In re Tyler, 149 U.S. 164, 13 S.Ct. 785, 37 L.Ed. 689; Scott v. Donald, 165 U.S. 58, 17 S.Ct. 265, 41 L.Ed. 632; Terrace v. Thompson, 263 U.S. 197, 44 S.Ct. 15, 68 L.Ed. 255; Cavanaugh v. Looney, 248 U.S. 453, 39 S.Ct. 142, 63 L.Ed. 354.

But in Gunter v. Atlantic Coast Line R. R. Co., supra, Mr. Justice White laid down the rule in the following language: "A suit against state officers to enjoin them from enforcing a tax alleged to be in violation of the Constitution of the United States is not a suit against a state, within the prohibition of the 11th Amendment."

The more recent case of Sterling v. Constantin, supra, was against the Governor and other officials of the state of Texas. In that case the court, speaking through Chief Justice Hughes, said:

"First. The District Court had jurisdiction. The suit is not against the state. The applicable principle is that, where state officials, purporting to act under state authority, invade rights secured by the Federal Constitution, they are subject to the

process of the federal courts in order that the persons injured may have appropriate relief."

■ It is difficult to fully harmonize the decisions in the many cases in which the above doctrine has been applied. I am convinced from my study of them, however, that the weight of authority would support the jurisdiction of a federal court to entertain a suit in equity brought to restrain the taxing officials of a state from proceeding to exact an inheritance tax alleged to be in contravention of the Constitution of the United States. The same would be true if the officer, acting under a valid state law, exceeded the authority conferred by the state. Sterling v. Constantin, supra.

In Poindexter v. Greenhow, supra, the court points out the distinction between the state and the government of the state and stresses the point that when the government acts within the sphere of the agency, it is a perfect representative "but outside of that, it is a lawless usurpation."

From an examination of the cases which have denied to the court jurisdiction because of the Eleventh Amendment, it is apparent that the court regarded a suit as one against the state if the purpose of it was to merely test the constitutionality of the statute (Fitts v. McGhee, supra), or to compel the performance of some direct obligation of the state (In re Ayers, supra; Hagood v. Southern, supra), or if the plaintiff attacked the validity of title to property vested in the state (Cunningham v. Macon & Brunswick R. R. Co., supra), or if the complainant undertook to control the discretion of any state officers (Board of Liquidation v. McComb, supra; Louisiana v. Jumel, 107 U.S. 711, 2 S.Ct. 128, 27 L.Ed. 448). Again, the suit is deemed to be one against the state if it is necessary to join it in order that the decrees of the court may be binding upon it.

After stating the established doctrine respecting actions at law brought against state officials, the court, in Cunningham v. Macon & Brunswick R. R. Co., supra, 109 U.S. 446, at page 456, 3 S.Ct. 292, 300, 609, 27 L.Ed. 992, added this language:

"Courts of equity proceed upon different principles in regard to parties. As was said in Barney v. Baltimore, 6 Wall. 280 [18 L.Ed. 825], there are persons who are merely formal parties without real interest, and there are those who have an interest in the suit, but which will not be injured by the relief sought, and there are those whose interest in the subject-matter of the suit renders them indispensible as parties to it. Of this latter class the court said, in Shields v. Barrow, 17 How. 130 [15 L.Ed. 158], 'they are persons who not only have an interest in the controversy, but an interest of such a nature that a final decree cannot be made without affecting that interest, or leaving the controversy in such a condition that its final disposition may be wholly inconsistent with equity and good conscience.' "

It does not follow, however, that the state is a necessary party if it is only consequentially affected. Fowler v. Lindsey, 3 Dall. 411, 1 L.Ed. 658; Poindexter v. Greenhow, supra.

■ Tested by those criteria which have been judicially suggested for the determination of the question of jurisdiction, the suit at bar cannot be considered to be a suit against the state; California is not named as a party in the record; the suit is not brought to specifically enforce an obligation of the state; it has no purpose to control the discretion of executive or administrative officers or administering funds actually in the public treasury. Nor is it necessary to make the state a party in order to carry into effect an appropriate decree.

The purpose of this bill is to prevent an illegal or unconstitutional exaction of inheritance taxes from the estate of its testator. Adequate relief will be afforded by a determination of the domicile of the testator and enjoining those charged with the duty of determining the tax liability to the respective states from proceeding so to do in a manner inconsistent with such determination.

It is objected that the respondents have no personal interest in the subject-matter of this interpleader, but in many of the cases in which jurisdiction has been sustained, the respondents were affected only in their official capacity.

The ratio decidendi in the cases is clear. In its inception the controversy is one between individuals, the respondent seeking to justify his acts by invoking the authority of a state law. He cannot rest upon

the mere assertion of the defense. He is required to establish it. If the law is invalid, or if he has exceeded his authority, his defense fails.

Up to this point I have considered only the question whether it is necessary to treat the proceeding as one against a state not named on the record as a nominal defendant.

For the reasons above outlined, I have reached the conclusion that such a proceeding does not come within the inhibitions of the Eleventh Amendment.

█ There are other contentions of the respondents to be considered. It is urged that the court is powerless to act in the premises because the determination of the tax under the laws of California is a judicial proceeding, and not an administrative one, as in Massachusetts. The respondent Sproul is an inheritance tax appraiser, appointed by the respondent Riley, as comptroller; and the respondent Gentry is the inheritance tax attorney.

It is quite apparent from an examination of the applicable statutes of California (Inheritance Tax Act of 1921 [St. Cal.1921, p. 1500, as amended]; Inheritance Tax Act of 1935 [St.Cal.1935, p. 1266]) that the inheritance tax appraiser, designated by the court having jurisdiction over the estate, performs functions which, at least, could be said to be quasi-judicial. This, however, would not prevent this court, under the Interpleader Act, from issuing process or an order of injunction against him. The terms of the act provide that: "Notwithstanding any provision of the Judicial Code [Part I of this title] to the contrary, said court shall have power to issue its process for all such claimants and to issue an order of injunction against each of them, enjoining them from instituting or prosecuting any suit or proceeding in any State court or in any United States court on account of such money or property or on such instrument or obligation until the further order of the court."

In view of the provisions of this statute, section 265 of the Judicial Code (28 U.S.C.A. § 379), prohibiting injunctions against a state court, does not apply.

█ It is also argued that the allegations of the bill do not bring the case within the purview of the statute. I am not impressed by this argument. In the first place, the bill is not a strict bill of interpleader but a bill in the nature of interpleader, and the distinction between the two is that the latter lies when there is shown in addition to multiple vexation some other reason for coming into equity; for example, the administration of a trust.

█ The law imposes upon the executor an obligation to pay all estate, inheritance, and succession taxes due both to the commonwealth of Massachusetts and to the state of California, and, therefore, as one being under obligations, written or unwritten, to the amount of $500 or more, it may interplead adverse claimants claiming the benefits arising by virtue of such obligation. It has given the bond required by the statute, and I apprehend no serious difficulty in drawing an order, or decree, which will, when complied with, discharge the complainant and release the bond, and this without unduly interfering with the authorities whose duty it is to determine the extent of the taxes due the respective states. It may be that ultimately the court will not be able to grant all the relief prayed for in the bill of interpleader, but if the court confines its determination to the question of domicile and decrees that the executor shall discharge the tax liability determined by the respective taxing officials in a manner consistent with the decision of this court relating to the domicile of the testator, it will thereby effectually prevent the unlawful exaction of a double tax upon transfers of intangibles and satisfactorily accomplish the purposes of the interpleader. I do not think the court, in these proceedings, can go so far as to adjudicate the exact amount of the tax due to each state. It can only decide whether the decedent was a resident of Massachusetts or of California. If it is determined that he was a resident of California, he then is a nonresident of Massachusetts, and vice versa.

It has been argued on behalf of these respondents that it was never intended by Congress that the Interpleader Act should be used to settle controversies such as is here presented. It is quite possible that we have to deal with a factual situation which was not brought to the attention of Congress. No legislation can contemplate every combination of circumstances that may arise to which the principles embodied in it may be applied. Clearly, it was the intention of Congress to afford an opportunity to determine, in one proceeding, conflicting interests in money,

property, or in benefits accruing from obligations. In my opinion, the plaintiff has brought his case within the fair intendment of the act.

An injunction may issue restraining, until further order of the court, further action on the part of the respondents relative to the determination, imposition, or collection of the inheritance taxes. The complainant may have other equitable relief according to its prayers.

Respondents' motion to dismiss is denied.